## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:15CR00028 |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| AMANDA JANE TIGNOR, | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Kevin L. Jayne, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, Amanda Jane Tignor, has been indicted for perjury in violation of 18 U.S.C. § 1623, in connection with her testimony at the trial of her drug coconspirator. Tignor pleaded guilty to that conspiracy and was sentenced. Her coconspirator, Richard Jerry Hicks, with whom she had been living, opted to go to trial. Tignor was called as a defense witness at that trial, and testified that while she had assisted others, Hicks was innocent of the manufacture of methamphetamine.

During cross-examination by the government, Tignor denied that she had talked to Hick's family about her upcoming testimony on the night before trial. When the government then confronted her with an audio recording from jail of such a conversation, she admitted that she had lied about not talking to Hicks'

family, although she continued to assert that Hicks was innocent. In this, she was not believed by the jury, since it ultimately convicted Hicks of all but one of the charges levied against him.

Tignor is not charged with perjury for her testimony that Hicks was innocent, but only as to her admitted lie regarding the telephone conversation with his family. Tignor has now moved to dismiss the prosecution on the basis of a subsection of the perjury statute, which provides in pertinent part that

> [w]here, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

18 U.S.C. § 1623(d). Does Tignor fall within this protection from prosecution? Of course, Tignor recanted her falsehood in the same continuous court proceeding, and the charged lie — about the telephone conversation with Hicks' family members — probably did not have a substantial affect on the trial. However, at the time that Tignor admitted the lie, it had clearly become manifest to her that the falsehood would be exposed, since by then she had heard the government's audio recording of her telephone call. The government contends that this fact disqualifies Tignor from relief, even though the statute's use of the word "or" appears to offer protection to a person who recants, even after it becomes manifest that the lie will be exposed, if the lie had not substantially affected the proceeding.

The issue is thus the proper construction of the statute. Is the word "or" to be accepted in its normal disjunctive meaning, or is the statute to be read as if the word "and" was actually meant by Congress? On this hangs the defendant's motion. I find that the plain language of the statute must be followed, and the defendant's motion will be granted.

I.

The facts upon which the defendant's motion is based are uncontested.

On December 8, 2014, Tignor and Hicks were indicted together by the grand jury of this court for conspiracy to manufacture methamphetamine, 21 U.S.C. § 841(a)(1) (Count One), possession of pseudoephedrine with intent to manufacture methamphetamine, 21 U.S.C. §§ 841(c)(1)-(2) (Count Two), creating a substantial risk of harm to human life while manufacturing methamphetamine, 21 U.S.C. § 858 (Count Three), manufacturing methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Four), manufacturing methamphetamine on premises where a child resided, 21 U.S.C. § 860a (Count Five), and maintaining a place for the purpose of manufacturing and distributing a controlled substance, 21 U.S.C. § 856(a)(1) (Count Six).

The government had obtained evidence that Hicks and Tignor were purchasing large amounts of pseudoephedrine, a substance used in the manufacture of methamphetamine. Search warrants were obtained for the home shared by

Hicks and Tignor and her two minor children, where components of a clandestine methamphetamine laboratory were found, along with drug use paraphernalia and a bottle containing liquid methamphetamine. Both Hicks and Tignor were arrested and charged.

Tignor entered a guilty plea on March 3, 2015, pursuant to a written plea agreement to the charges of conspiring with Hicks to manufacture methamphetamine (Count One) and creating a substantial risk of harm to human life while manufacturing methamphetamine (Count Three). She was sentenced to 78 months imprisonment on June 1, 2015. Hicks went to trial on July 28-29, 2015. Hicks did not testify and called only two witnesses, one of whom was Tignor. On direct examination by Hicks' attorney, she testified that she had not conspired with Hicks, but rather had supplied pseudoephedrine to other persons at other places without Hicks' knowledge; that Hicks had never manufactured methamphetamine at the home she shared with him; and that the incriminating materials found at the home had either been left there by a prior resident or had been used for innocent purposes.

On cross-examination, the government inquired of Tignor about the inconsistency of this testimony with her guilty plea to a charge of conspiring with Hicks, to which she explained that since her written plea agreement had not mentioned Hicks by name, she had not realized that she was pleading guilty to a

conspiracy involving him, even though the Indictment charged only the two of them, and the government's proffer of evidence at her change-of-plea hearing referred to a conspiracy only involving them.

The prosecutor also asked Tignor if she had discussed her testimony with Hicks or his family prior to the trial, which she denied. The government then produced an audio recording of her jail telephone conversation with Hicks' family, which occurred the night before trial began. The Indictment recites Tignor's testimony, with the false statements underlined, and Tignor's subsequent recantation as follows:

> Q. Did you ever talk about your testimony with anybody, what you were going to testify to in this case?
>
> A. <u>No</u>.
>
> Q. Did you ever talk to Mr. Hicks about your testimony?
>
> A. No, I haven't talked to Jerry.
>
> Q. Now Mr. Hicks, he has family that you know, correct?
>
> A. Yes.
>
> Q. Did you ever talk to his family about what you were going to testify to today?
>
> A. <u>No</u>, because it kind of puts me in the middle. They've got my kids, you know, and both of us, with the trial going on, I didn't want to talk to them about what was going on about my charges.
>
> Q. You don't want to be put in the middle of this; is that right?

A. No, sir, that's not it. I don't want my kids put in the middle of it because they're living with his mother.

Q. Don't want the kids to be put in it. Certainly, the kids don't have any knowledge of what you're going to testify to today is that right?

A. No.

Q. No?

A. No, sir.

Q. Ms. Hicks, did you pass any messages to family and friends using the phone system, the recorded phone system in Abingdon jail?

A. I talked to my family last night, my children. <u>As far as telling messages, no</u>. Maybe telling them that I love him, some things like that, that I talk to them about at other times.

Q. I'm sorry, are you done?

A. Yes.

. . . .

Q. I asked if you talked with family and friends about your testimony. That was a lie, wasn't it?

A. No, sir, it wasn't a lie. I just said what I told investigators, and what I was ready to say on the witness stand if they called me.

Q. So, when I asked you the question whether you knew, whether you had talked about your testimony with family and friends, you misunderstood my question?

A. Yes, it was a lie.

Q. It was a lie?

-6-

> A. It was.
>
> Q. Why did you lie?
>
> A. Because I didn't realize that you were going to have tapes of the things that I said, and remind me of the things that I said. I didn't relay information. That's what you asked to begin with. There was no relay of information. Just talking about what happened yesterday.

(Indictment ¶ 2, ECF No. 2.) In fact, as alleged in the Indictment, and as shown by the recorded telephone conversation introduced at Hicks' trial, Tignor spoke to her daughter and to Hicks' mother the day before the trial began about the substance of her intended testimony and asked Hicks' mother to tell Hicks about it.

## II.

Disputes as to the proper construction of 18 U.S.C. § 1623(d) have arisen before, and the courts are split as to the burden an accused must meet in order to mount a successful recantation defense under the statute. The Fourth Circuit has not yet spoken on the issue.

The majority of circuits that have examined the issue have held that the accused must meet both conditions, in spite of the use of the word "or" between them. *United States v. Sherman,* 150 F.3d 306, 313-18 (3d Cir. 1998); *United States v. Fornaro,* 894 F.2d 508, 510-11 (2d Cir. 1990); *United States v. Scivola,* 766 F.2d 37, 45 (1st Cir. 1985); *United States v. Scrimgeour,* 636 F.2d 1019, 1021-24 (5th Cir. 1981); *United States v. Moore,* 613 F.2d 1029, 1039-45 (D.C. Cir.

1979). The Eighth Circuit has held, by contrast, that the requirements are plainly disjunctive, and that a showing by the defendant of either of them is sufficient to satisfy the statute. *United States v. Smith,* 35 F.3d 344, 345-47 (8th Cir. 1994).

The courts that have construed the statute contrary to its plain meaning have done so based on their view that such a reading would be contrary to the purposes of the statute. In other words, those courts reasoned that a disjunctive application of the statute "is both inconsistent with, and frustrating to, Congress' twofold intent in enacting the legislation."[1] *Sherman*, 150 F.3d at 313. This is because

> [a] witness could violate his or her oath in the comfort of knowing that no perjury prosecution was possible so long as he or she recanted as soon as it appeared the perjury would be disclosed. A recantation at that point, under [the disjunctive] interpretation, would shield the conduct even if the judicial proceedings had been substantially affected by the false testimony. Similarly, a witness could escape prosecution even after the false nature of it had been disclosed and hope to successfully argue that the proceedings had not been substantially effected because there had been a recantation.

---

[1] This twofold intent behind § 1623 has been explained by the D.C. Circuit. "Congress magnified the deterrent role of the criminal law by easing the Government's path to perjury convictions; and the emphasis here was plainly on pressure calculated to induce the witness to speak the truth at all times. Congress also extended absolution to perjurers who recant under prescribed conditions, admittedly an endeavor to secure truth through correction of previously false testimony. Each of these techniques has its own virtue, and it was, of course, the prerogative of Congress to put them to use; but it is evident that in some degree they unavoidably must work at cross-purposes." *Moore*, 613 F.2d at 1041.

*Id*. at 314. The Third Circuit's opinion in *Sherman* relied heavily on the analysis it gave in *United States v. Lardieri,* 506 F.2d 319 (3d Cir. 1974). In *Lardieri*, the Third Circuit explored the legislative history behind § 1623.

> [I]t was the congressional judgment that the overall purpose of Section 1623, obtaining more truthful responses from witnesses before courts and grand juries, would be best accomplished by facilitating perjury convictions for those who had violated their oaths. In order to remove encumbrances from such convictions, Congress abandoned the two-witness rule, discontinued the requirement that the prosecutor prove the truth of one of two irreconcilable statements under oath, and required only a 'knowing' rather than a 'willful' state of mind.

*Lardieri* at 323 (footnotes omitted) (citing S. Rep. No. 91-617, at 57-59 (1969)). While the analysis set forth in *Lardieri* is accurate, even the Third Circuit has admitted that "there is not a wealth of legislative history available for § 1623." *Sherman,* 150 F.3d at 315.

The *Sherman* court also spent significant time analyzing a similar New York perjury recantation statute. Notably, that statute uses the word "and" instead of "or." N.Y. Penal Law § 210.25 (McKinney) ("In any prosecution for perjury, it is an affirmative defense that the defendant retracted his false statement in the course of the proceeding in which it was made before such false statement substantially affected the proceeding and before it became manifest that its falsity was or would be exposed.")

-9-

Case 1:15-cr-00028-JPJ-PMS   Document 25   Filed 11/17/15   Page 9 of 15   Pageid#: 183

The Eighth Circuit acknowledged the majority approach, and much of the reasoning behind that approach, as discussed above. However, that court held that while the majority's reasoning "may raise some uncertainty about the language Congress intended to enact, it does not create an ambiguity in an otherwise plainly worded statute nor does it militate against according the enacted language its ordinary meaning." *Smith*, 35 F.3d at 347.

> In this case, where the statute is unambiguous on its face, the language of the statute is conclusive as to legislative intent, and we thus decline to abandon the ordinary disjunctive meaning accorded to "or" in favor of a conjunctive "and," as such a construction would defeat the plain language of the statute and would not foster any clearly articulated legislative intent to the contrary.

*Id*.

The Fourth Circuit has said the following about statutory interpretation:

> When conducting statutory analysis, we must first determine whether the meaning of the statute is ascertainable through the text alone. The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. This includes employing various grammatical and structural canons of statutory interpretation which are helpful in guiding our reading of the text.

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011) (internal quotation marks and citations omitted). Unless Congress has indicated otherwise, the Fourth Circuit gives "statutory terms their ordinary, contemporary, common meaning." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir.

2013) (internal quotation marks and citation omitted). "[U]nless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language. . . ." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 265 (4th Cir. 2004) (citations omitted).

The Fourth Circuit has recognized an exception to the plain meaning rule that can be applied "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent." *Id.* (citation omitted). However, the Fourth Circuit has said that this exception should only be applied in "exceptionally rare" circumstances. *Id*. (citation omitted). When determining whether such a circumstance exists, it should be recognized that "Congress is the policymaker — not the courts." *Id.* at 269.

As described in one of the majority cases, "[T]he question is difficult, and its solution has taxed our resources severely." *Moore*, 613 F.2d at 1039-40 (holding that statute should be read in conjunctive because to hold otherwise would frustrate legislative intent). Nevertheless, I find no clearly expressed congressional intent that would justify overruling the plain meaning of the statute.[2]

---

[2] The defendant also argues that the rule of lenity should be applied on her behalf. But that rule is customarily used only where "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*,

Neither the legislative history nor the words in the statute make clear that Congress meant for the statute to be read in the conjunctive. If anything, the fact that Congress may have relied upon the New York statute, which used the word "and," yet deviated from that statute so that § 1623(d) contained the word "or," suggests that Congress consciously intended for that portion of the statute to be applied in the disjunctive.

The majority approach is mostly based on the idea that reading § 1623(d) in the disjunctive would frustrate the statute as a whole, which was passed to both discourage perjury and encourage recanting. *See Moore,* 613 F.2d at 1043. However, both the disjunctive and conjunctive approaches could potentially frustrate those dual goals of Congress.

Under the majority approach, if a witness tells a lie that substantially affects a proceeding, she has little incentive to recant on her own volition. This is because such a recantation will not necessarily cause her to avoid a later perjury conviction since she will not be able to meet the "substantially affected" prong of § 1623(d). Thus, the majority approach discourages witnesses from recanting when such a recantation might be most helpful. Some of the majority courts appear to reason that false statements will no longer have a substantial effect by mere virtue of the fact that a retraction took place, but the language of the statute demands that this

---

560 U.S. 474, 488 (2010) (internal quotation marks and citations omitted). I find no need to apply that rule here, in light of the plain language of the statute.

-12-

reasoning cannot be correct. If Congress felt that a retraction guaranteed that false testimony would not have a substantial effect, then there would have been no need to include the "substantially affected" prong in § 1623(d).

The plain language construction of the statute is not inapposite to Congress' twin goals of preventing perjury while encouraging recantation. A witness can always avoid a perjury conviction by recanting on her own volition before it is manifest that her lie will be exposed. This makes sense, since such a voluntary retraction of false testimony likely will have the same effect as if the witness had originally told the truth. If it has become manifest that a witness' perjury will be exposed, then recanting will only bar perjury prosecution if the false statement has not substantially affected the proceedings. Again, this makes sense — there is little reason to charge someone with perjury when she has told a lie that did not substantially affect the proceedings, been caught, and retracted her false statement, as is the case with Tignor.

Given that the legislative history does not clearly favor the conjunctive approach, and competing arguments exist as to which approach would best advance the dual goals that Congress intended to advance when it passed § 1623, I cannot say the plain reading of that statute is "demonstrably at odds with clearly expressed legislative intent." *In re Sunterra Corp.*, 361 F.3d at 265. As such, I

-13-

Case 1:15-cr-00028-JPJ-PMS   Document 25   Filed 11/17/15   Page 13 of 15   Pageid#: 187

reasoning cannot be correct. If Congress felt that a retraction guaranteed that false testimony would not have a substantial effect, then there would have been no need to include the "substantially affected" prong in § 1623(d).

The plain language construction of the statute is not inapposite to Congress' twin goals of preventing perjury while encouraging recantation. A witness can always avoid a perjury conviction by recanting on her own volition before it is manifest that her lie will be exposed. This makes sense, since such a voluntary retraction of false testimony likely will have the same effect as if the witness had originally told the truth. If it has become manifest that a witness' perjury will be exposed, then recanting will only bar perjury prosecution if the false statement has not substantially affected the proceedings. Again, this makes sense — there is little reason to charge someone with perjury when she has told a lie that did not substantially affect the proceedings, been caught, and retracted her false statement, as is the case with Tignor.

Given that the legislative history does not clearly favor the conjunctive approach, and competing arguments exist as to which approach would best advance the dual goals that Congress intended to advance when it passed § 1623, I cannot say the plain reading of that statute is "demonstrably at odds with clearly expressed legislative intent." *In re Sunterra Corp.*, 361 F.3d at 265. As such, I

interpret § 1623(d) in the disjunctive as written, and hold that the defendant must only meet one of the two requirements laid out in the statute.

While the burden of proof is on Tignor, *see Scrimgeour*, 636 F.2d at 1024, I find that she has shown that, at the time her admission was made, her false testimony about the telephone conversation had <u>not</u> substantially affected the proceedings. The false statements charged in the Indictment had nothing to do with the guilt or innocence of Hicks, but only concerned whether Tignor had previously spoken to his family about the testimony she was going to give at his trial. It was probably material to the charges at issue, since the jury might infer from it that she intended to communicate through them to Hicks with the further inference that her testimony was contrived with him. On the other hand, her lie did not directly impeach her claim that she had not conspired with Hicks. Moreover, of course, the end result was that Hicks was convicted by the jury in spite of her claim that he was innocent.

Because I find that Tignor has shown that she meets at least one of the prongs of § 1623(d), I find that her prosecution for perjury is barred.

### III.

For the reasons set forth above, it is **ORDERED** that the defendant's Motion to Bar Prosecution and Dismiss (ECF No. 15) is hereby GRANTED. A separate

judgment dismissing the Indictment will be entered herewith.

           ENTER: November 17, 2015

           /s/ James P. Jones
           United States District Judge